UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY ORJI,<br><br>             Plaintiff,<br><br>      v.<br><br>WALMART SUPERSTORES, INC.,<br><br>             Defendant. | No. 2:23-cv-1795-TLN-SCR<br><br><u>ORDER AND FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff Joy Orji is proceeding pro se in this action, which was referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. section 636(b)(1).  Pending before the undersigned are Defendant WalMart Superstores, Inc.'s motion to dismiss (ECF No. 9) and motion to strike portions of the Complaint (ECF No. 8), as well as Plaintiff's motion for leave to file a sur-reply to each motion (ECF No. 26).  For the reasons stated below, the Court grants leave to file the sur-replies, recommends the motion to dismiss be granted without leave to amend, and recommends the motion to strike be denied.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff commenced this action on August 23, 2023, by filing a Complaint and paying the applicable filing fee.  ECF No. 1.  The Complaint alleges that she is "a United States citizen . . . who is Black with African ancestry."  *Id*. at ¶ 3.  After paying for items at a cash register in one of Defendant's stores, Plaintiff was barred from leaving by a guard "Kathy" because the receipt

showed she did not pay for some of the items. *Id*. at ¶¶ 14-21.  Plaintiff asked Kathy to have the cashier who had assisted her join them to scan the unpaid items without forcing Plaintiff to stand in line again. *Id.* at ¶23.  When Plaintiff repeated this to a supervisor named "Shanika," the supervisor yelled at her to go back in line, telling her to "go back to where ever you are from" and "we don't do that here in America" among "other racial epitaphs [*sic*] not clearly heard by the Plaintiff[.]" *Id*. at ¶¶ 25-26.  Once Plaintiff told the manager on duty about this incident, the manager apologized and gave the disputed items to Plaintiff for free. *Id*. at ¶¶ 28-29.  Shanika refused to apologize for her conduct. *Id*. at ¶29.

Plaintiff alleges that Defendant's conduct constituted racial discrimination in violation of 42 U.S.C. §1981 and California Civil Code § 51 ("Unruh Act"). *Id*. at ¶¶ 46-59.  Plaintiff further alleges she was subjected to false imprisonment because she felt she could not leave the store until she paid for items, despite believing she had already paid for them. *Id*. at ¶¶ 62-68.

Plaintiff seeks damages, injunctive and declaratory relief, attorney fees, and costs under Section 1981 and the Unruh Act. *Id*. at ¶¶ 2, 53.  The requested injunctive relief includes an injunction "to enjoin Defendant from violating the Unruh Act," and the Complaint cites California Civil Code § 52(a) to support its claim for attorney's fees and costs. *Id*. at ¶61.  Plaintiff's prayers for relief include requests for "[i]njunctive relief, preventive relief, or any other relief the court deems proper[,]" and for "[i]nterest at the legal rate from the date of the filing of this action." *Id*. at Prayer, ¶¶ 1, 4.

**LEGAL STANDARD**

I.   **Motion to Dismiss**

A defendant may move to dismiss a claim under Rule 12(b)(6) if the allegation "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  This standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and to "draw all reasonable inferences in favor of the nonmoving party." *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (internal quotation marks omitted).  Stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.

On a Rule 12(b)(6) motion, the court may consider all materials incorporated into the complaint by reference, as well as evidence properly subject to judicial notice. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 617-18 (9th Cir. 2022).  "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Boquist*, 32 F.4th at 773–74 (internal citation and quotation marks omitted) (cleaned up).

The court may dismiss for failure to state a claim when the allegations of the complaint and judicially noticeable materials establish an affirmative defense or other bar to recovery, such as the expiration of the statute of limitations. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *see also Goddard v. Google Inc.*, 640 F. Supp. 2d 1193, 1199, n. 5 (N.D. Cal. 2009) (noting that "affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the [c]omplaint").  However, dismissal under Rule 12(b)(6) is improper if the allegations of the complaint and judicially noticeable materials concerning the defense involve disputed issues of fact. *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam)).

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *In re Doe*, 58 F.3d 494, 497 (9th Cir. 1995)).  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012).

## II. Motion to Strike

A motion to strike allows a court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone, Inc. v. Handi-Craft, Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)), rev'd on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 (1994); *see also Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Ultimately, whether to grant a motion to strike applying these standards lies within the sound discretion of the district court. *Fantasy, Inc.*, 984 F.2d at 1527; *see also California Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F.Supp.2d 1028, 1032-33 (C.D. Cal. 2002).[1]

## ANALYSIS

## I. Plaintiff's Motion to File Surreplies (ECF No. 26)

On December 27, 2023, Plaintiff filed surreplies to both Defendant's motion to dismiss and motion to strike. ECF Nos. 21-22. Defendant objected to both surreplies on December 28, 2023 for failure to seek prior approval pursuant to Local Rule 230(m). ECF Nos. 24-25. Plaintiff seeks leave to file the surreplies as responses to new arguments and evidence that Defendant introduced in its reply briefs. ECF No. 26 at 1.

The Ninth Circuit has held that "where new evidence is presented in a reply" to a motion, "the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) (quoting *Black v. TIC INV. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)). Defendant's reply briefs argue that Plaintiff's opposition briefs were untimely, that Defendant's counsel had warned her during meet and confer conversations that there were substantial issues with the pleadings, and that Plaintiff failed to articulate why the motions should not be granted. ECF No. 19 at 2-6, ECF No. 20 at 2-6. Both briefs include a declaration from Defendant's counsel detailing the meet and confer efforts

---

[1] Defendant requests judicial notice of the Complaint in this action. ECF No. 8-3. That request is denied because the Complaint is already part of the record in this case.

and Plaintiff's failure to timely respond to the motions, with Defendant's emails to Plaintiff attached as exhibits.  ECF Nos. 19-1, 20-1.

In her surreplies, Plaintiff asks the Court to exercise its discretion to consider the opposition briefs, disputes Defendant's narrative of efforts to meet and confer, argues that Defendant's counsel acknowledged the discriminatory nature of Plaintiff's treatment, and asks for leave to amend the Complaint should the Court grant either motion.  ECF Nos. 21-22.  Plaintiff also attached an email from Defendant's counsel as evidence in support of her surreply to the motion to dismiss.  ECF No. 21 at 8-10.  Plaintiff also submitted a declaration explaining her failure to timely oppose the motions and detailing the history of efforts to meet and confer.  ECF No. 23.

Plaintiff's surreply includes evidence to rebut Defendant's new evidence regarding whether Defendant adequately met and conferred with Plaintiff prior to filing either motion.  The Court therefore GRANTS leave to file surreplies and will consider the surreplies filed on December 27, 2023.

**II.     Untimely Oppositions**

Defendant filed its motions to dismiss the Complaint and to strike portions thereof on November 22, 2023.  ECF Nos. 8-9.  Plaintiff filed her opposition briefs on December 13, 2023.  ECF Nos. 14-15.  Defendant argues in reply that because any opposition should be filed no more than fourteen days after the motion, Plaintiff's opposition should be disregarded as untimely.  ECF No. 19 at 2, 20 at 2 (citing Local Rule 230(c)).  Defendant further argues that a pro se plaintiff is still required to abide by both the Local Rules and the Federal Rules of Civil Procedure.  ECF No. 19 at 2-3 (citing Local Rule 183; *Mazur v. Department of Transportation*, 507 F. Supp. 3 (E.D.Pa.1980)).  Plaintiff responds that when "a plaintiff pleads pro se in a suit for the protection of civil rights the court should endeavor to construe the plaintiff's pleading without regard for technicalities[.]"  ECF No. 21 at 2 (quoting *Picking v. Pennsylvania R. Co.*, 151 F.2d 240, 244 (3rd Cir. 1945)).[2]

A pro se litigant's failure to comply with applicable rules "may be ground for dismissal,

---

[2] Plaintiff miscites *Puckett v. Cox*, 456 F. 2d 233 (6th Cir. 1972).  ECF No. 21 at 2.

judgment by default, or any other sanction appropriate[.]" Local Rule 183(a). The current circumstances do not merit such sanctions. Although failure to file a timely opposition "*may*…be construed by the Court as a non-opposition to the motion[,]" the Court is not required to make this finding. Local Rule 230(c) (emphasis added). That a party who fails to file the opposition is not "entitled to be heard in opposition to a motion at oral arguments" is irrelevant when, as here, no oral argument is to be heard on this matter. *Id*.

As the moving party, Defendant addressed in its reply briefs the merits of Plaintiff's reply as to meet-and-confer efforts and whether the Complaint's factual allegations state a plausible claim to relief. *See* ECF No. 19 at 3-5. Defendant is not prejudiced by consideration of the untimely opposition briefs.

**III.    Meet and Confer**

Plaintiff disputes whether Defendant has fulfilled an asserted duty to meet and confer as to the motions to dismiss and to strike. ECF No. 22 at 3. As a threshold matter, neither the Federal Rules of Civil Procedure nor this Court's Local Rules nor the undersigned's Civil Standing Orders require a defendant to meet and confer with a plaintiff prior to filing a motion to dismiss. The Court accordingly construes Plaintiff's argument in this realm as an argument that Defendant acted in bad faith. Indeed, Plaintiff asserts that Defendant's counsel informed her on October 31, 2023, that Defendant planned to enter settlement negotiations for this matter, that counsel did not intend to file a motion to dismiss, and that she needed an extension of the deadline to answer the Complaint that was due the next day. ECF No. 15 at 2-3, 22 at 3. Defendant asserts that its counsel asked for more time to appear in this matter, not answer the Complaint, and warned Plaintiff about the Complaint's deficiencies and plans to file motions in response. ECF No. 19 at 3-4, 19-1 at 2.

After a phone call between Plaintiff's husband and Defendant's counsel on October 31, 2023, Defendant's counsel emailed both Plaintiff and her husband. ECF No. 19-1 at 8. The email specified that there were "some concerns about portions of the complaint[,]" particularly the requests for injunctive relief and prejudgment interest. *Id*. Defendant's counsel asserts that she spoke with Plaintiff herself via phone after this email, whereas Plaintiff asserts the email

1  memorialized a phone conversation that preceded it.  *Id.* at 2.  Plaintiff's declaration asserts that
2  during the phone call, counsel told her the Complaint looked fine but for those issues and
3  promised to send a stipulation to strike them.  ECF No. 23 at 1.
4       At minimum, the emails show that the parties discussed deficiencies with the Complaint.
5  The contents of the emails are not necessarily a complete or exclusive list of the issues discussed.
6  Plaintiff has failed to provide any evidence showing that the issues raised in the motion to dismiss
7  were not discussed or that Defendant acted in bad faith.  Even if applicable procedural rules or the
8  undersigned's standing order imposed a meet and confer requirement, Defendant would have
9  fulfilled that requirement prior to filing.

### IV.    Claim under 42 U.S.C. § 1981

> Under federal law, everyone has the same right:
> to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981(a).  The right to "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. §1981(b).

     To state a claim pursuant to Section 1981, the Complaint must allege: (1) the plaintiff is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, i.e., the making and enforcing of a contract.[3]  *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).  A plaintiff "bears the burden of showing that race was a but-for cause of [her] injury."  *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 333 (2020).

     Defendant argues that Plaintiff cannot state a claim because her right to contract with

---

[3] The concept of race discrimination under Section 1981 is expansive. "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.  Such discrimination is racial discrimination that Congress intended Section 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory."  *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

Walmart was not infringed. ECF No. 9-1 at 8-9. It notes that when Plaintiff tried to leave the store, Kathy only stopped her because her receipt showed that she did not pay for every item she had bought. *Id.* at 9. Although the supervisor Shanika then used "racial epitaphs" [*sic*], Defendant argues that Plaintiff cannot demonstrate they were racially motivated. *Id.* In any case, Shanika took no further action to actually interfere with Plaintiff's efforts to contract with Walmart, and a store manager eventually gave the disputed items to Plaintiff for free. *Id.* at 10. Plaintiff is therefore unable to show that she could not freely enter a contractual relationship with the store, or that she would have but for the alleged misconduct. *Id.*

Plaintiff responds that by saying "…you can go back to where ever you are from[…]we don't do that here in America[,]" Shanika and therefore Defendant excluded Plaintiff from those who have the right to "enjoy" the right to contract with the store. ECF No. 15-1 at 2 (citing 42 U.S.C. §1981(a)). Plaintiff argues that Defendant's customers are all entitled to "[q]uiet enjoyment of a contractual relationship, respect for one's dignity, and equal treatment of all patrons[,]" which Defendant denied to Plaintiff. *Id.* at 3. Plaintiff adds in surreply that the racist comment negatively affected her self-esteem and her confidence in dealing with others in her personal life. ECF No. 22 at 5. She further argues that Defendant's counsel acknowledged the basis of Plaintiff's claim by saying, "I am sorry for what you went through, even though I have not suffered discrimination based on national origin as you have, but as a woman, I know what it means to be discriminated against[.]" *Id.* Plaintiff concludes that the Complaint has therefore alleged sufficient facts to state a plausible claim under Section 1981(a). *Id.* at 6.

As Plaintiff notes, when ruling on a motion to dismiss, the Court is required to treat all factual allegations as true. See *Iqbal*, 556 U.S. at 678. This requires, however, distinguishing between a factual allegation and a conclusion of law. The Complaint's factual allegations include that (1) the cashier improperly scanned the items, (2) Kathy stopped Plaintiff from leaving until she paid for all items, (3) Kathy denied her request to have the cashier come scan the items, (4) Plaintiff repeated this request to Shanika, (5) Shanika responded by telling Plaintiff to go back to where she came from, and (6) the manager eventually paid for the items and let Plaintiff go. But Plaintiff's statement that Defendant therefore "den[ied] Plaintiff 'full and equal enjoyment' [of]

8

contract, use of the services, privileges and advantages of the Walmart Supercenter" as defined in Section 1981(a) is a conclusion of law.  *See* ECF No. 1 at ¶50.

Based on the alleged facts, racial discrimination did not deprive Plaintiff of her ability to contract with Defendant.  *See Comcast*, 589 U.S. at 333.  The United States Supreme Court has emphasized that Section 1981 is not "an omnibus remedy for all racial injustice" and is "limited to situations involving contracts." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006). A claim exists when the alleged racial discrimination either "blocks the creation of a contractual relationship" or "impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id.* at 476.

It appears there is no Ninth Circuit precedent applying these principles to a situation involving discriminatory statements in a retail setting.  There is, however, consensus among other courts about the standard that applies in this situation.  In *Hammond v. Kmart Corp.*, the First Circuit Court of Appeals held that comments "fueled by racial animus" that "humiliated and deeply offended" the plaintiff are insufficient to violate Section 1981 when a customer was still able to purchase and obtain the desired items through the same procedure and at the same price as other customers.  733 F.3d 360, 364 (1st Cir. 2013).  *See also Garrett v. Tandy Corp.*, 295 F.3d 94, 101-02 (1st Cir. 2002) (holding that a plaintiff does not have an actionable claim when the alleged discrimination did not prevent him from making the desired purchases or enjoying the use of the purchased items).  While *Hammond* is the leading case on this issue, "[v]irtually all federal courts that have analyzed Section 1981 claims in the retail merchandise context have required the plaintiff to show that he was actually prevented from making a purchase." *Benzinger v. NYSARC, Inc. N.Y.C. Chapter*, 385 F. Supp. 3d 224, 234 (S.D.N.Y. 2019).

Plaintiff's allegations are similar to the allegations underlying the complaint in *Hammond*. Plaintiff does not dispute that she ultimately received the goods she tried to buy, when the manager paid for the disputed items and let Plaintiff leave the store.  She instead argues that Shanika's comments during the transaction were discriminatory and kept her from "enjoying" the benefits thereof.  As in *Hammond*, however, this employee conduct did not hinder the contractual relationship at issue—the exchange of items for money.

9

To be clear, the Court's analysis turns on the fact that Plaintiff was subjected to limited offensive comments by one of Defendant's employees, which did not stand in the way of Plaintiff completing her transaction. Had Plaintiff alleged severe and pervasive discriminatory statements by Defendant's employees, the outcome might very well be different. In such a case, the retail environment could be so discriminatory that it would effectively prevent Plaintiff from entering into a contractual relationship. Indeed, in the employment context, "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not" violate Section 1981, *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir.2003), but "severe and pervasive" comments that "interfere[] with an employee's work performance" do violate Section 1981, *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir.2008). Because Plaintiff was not subjected to severe and pervasive discriminatory conduct, the Court need not expand further on how such a "severe and pervasive" standard might fit within the retail framework described by *Hammond* and other courts.

While the Court does not discount the impact that Shanika's comments had on Plaintiff, Plaintiff's right to enter a contractual relationship with Defendant was not impeded. She has therefore failed to articulate a plausible claim under Section 1981. The Court recommends that the motion to dismiss this cause of action be GRANTED.

## V.    Claim Under the Unruh Act

Under the Unruh Act:
All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code §51(b).

Defendant argues that Plaintiff cannot prove that her treatment was unequal compared to how a white customer would have been treated if he had unpaid items in his cart when leaving the store. ECF No. 9-1 at 12. Defendant then argues that the claim under the Unruh Act fails for the same reasons as a claim under Section 1981. *Id.* Plaintiff responds that the Unruh Act covers "all

arbitrary and intentional discrimination by a business establishment on the basis of" race and similar characteristics.  ECF No. 15-1 at 3.

The Unruh Act "focuses on discriminatory behavior by business establishments" and seeks "to compel recognition of the equality of all persons in the right to the particular service offered by an organization or entity covered by the act." *Ramirez v. Wong*, 188 Cal.App.4th 1480, 1485 (quoting *Stamps v. Superior Court*, 136 Cal.App.4th 1441, 1448, 1452 (2006)). *Ramirez* decided whether female apartment tenants had a claim under the Unruh Act against a landlord who went into their bedrooms and invaded their privacy.  188 Cal.App.4th at 1483.  The Court held that although the landlord might be liable under other causes of action, he was not liable under the Unruh Act because his conduct "had nothing to do with the denial of equal accommodations or facilities on the basis of sex." *Id*.

Whether a white customer in Plaintiff's situation would have been treated differently is unclear.  Kathy, for example, may have complied with a white customer's request to have the cashier meet them to scan any items missing from the receipt.  Regardless, as with the claim under Section 1981, Plaintiff cannot show that either Kathy's behavior or Shanika's discriminatory comments affected her ability to purchase the disputed items, particularly after the manager gifted them to her. *See supra*.  Because Plaintiff cannot show that she was denied the right to purchase Defendant's goods, she cannot plead sufficient facts to support a claim under the Unruh Act.  The Court recommends that the motion to dismiss this cause of action is GRANTED.

**VI.    Claim of False Imprisonment**

The tort of false imprisonment "is premised upon a violation of the personal liberty of another accomplished without lawful authority." *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 753 (1997).  An actor is liable for false imprisonment if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it.  Restatement (Second) of Torts, §35.  Even if there is a reasonable means of escape, such confinement is considered complete unless the other person is aware of such means. *Id*. at §36(b). Under the shopkeeper's privilege, however, a shopkeeper "may detain a person for a

reasonable time for the purpose of conducting an investigation in a reasonable manner whenever the merchant has probable cause to believe the person to be detained is attempting to unlawfully take or has unlawfully taken merchandise from the merchant's premises." Cal. Penal Code §490.5(f)(1). *See also Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 716 (1994) (noting that the California Penal Code codified the preexisting shopkeeper's privilege).

The Complaint asserts that because Plaintiff felt like she could not leave the store without being wrongfully tagged as a shoplifter, despite believing she had already paid for the items, Defendant had falsely imprisoned her in the store. ECF No. 1 at 7. Defendant asserts that the situation cannot constitute false imprisonment because Plaintiff knew about two reasonable means of escape. ECF No. 9-1 at 13. She could pay for the disputed items at a cashier's station or a self-checkout area, or she could give the unpaid items to Kathy and exit the store. *Id*. To the extent that the Complaint alleges Plaintiff was imprisoned through intimidation rather than physical means, Defendant responds that any such intimidation only began after Plaintiff had refused to go back to the cashier to pay. ECF No. 9-1 at 13.

Assuming *arguendo* that the Complaint sufficiently pleads a prima facie case of false imprisonment, Defendant also argues that the shopkeeper's privilege applies. *Id*. at 14. Defendant asserts that it had reasonable cause to believe Plaintiff had not paid for all the goods she tried taking with her because the receipt did not say she had done so. *Id*. To the extent that the time Plaintiff was detained was unreasonable, Defendant argues that Plaintiff subjected herself to the extra time by refusing to go back to the cashier to pay the outstanding amount owed. *Id*.

Plaintiff responds that there was no legal justification for her restraint because the confusion as to whether she had paid for all her items was caused by the Defendant's own negligence. ECF No. 15-1 at 4. Plaintiff adds in surreply that whether the shopkeeper privilege applies is a question for a trier of fact and not appropriate to resolve via motion to dismiss. ECF No. 22 at 5.

Although the Court must accept a complaint's factual allegations as true when assessing a motion to dismiss, it does not accept the conclusory allegations of law as true. *See supra*; *Iqbal*,

556 U.S. at 678. Whether the Complaint's factual allegations support a claim of false imprisonment or the shopkeeper's privilege are questions of law. In the Complaint, Plaintiff admits that when Kathy asked for her receipt, it showed that Plaintiff had paid for only one out of five items stuck together. ECF No. 1 at ¶¶ 19-20. Plaintiff conceded that she needed to pay for the others by asking both Kathy and Shanika to have the cashier scan her items without making her stand in line again. *Id*. at ¶¶ 23-24. Defendant did not just have "reasonable cause" to believe that Plaintiff had not paid for everything; both parties knew it. *See* ECF No. 9-1 at 14. Assuming *arguendo* that Plaintiff was imprisoned under tort law, any imprisonment until the manager either ensured Plaintiff had paid for the remaining items (or, as happened here, gave those items to Plaintiff for free) was protected under shopkeeper's privilege.

Because the Complaint pleads sufficient facts to conclude that an affirmative defense applies, it necessarily does not plead sufficient facts to demonstrate that Plaintiff has a plausible claim for false imprisonment. The Court recommends GRANTING the motion to dismiss this cause of action.

**VII.   Leave to Amend Causes of Action**

When a motion to dismiss claims is granted, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (quoting *Doe*, 58 F.3d at 497). Plaintiff requests such leave to amend her Complaint. ECF No. 22 at 5.

Plaintiff does not identify any facts she can add to cure the defects with each cause of action. The reasons for granting this motion suggest that she cannot. Claims under 42 U.S.C. § 1981 and the Unruh Act fail because Plaintiff's allegations show she successfully purchased (or was gifted) the disputed items from Defendant, notwithstanding an employee's conduct during the incident. *See supra*; ECF No. 1 at ¶¶ 28-29. The claim for false imprisonment fails because the Defendant only prevented Plaintiff from leaving the store until someone paid for the disputed items. See *supra*; ECF No. 1 at ¶¶ 19-29. Plaintiff cannot cure these defects by amending her Complaint without admitting that the current allegations are false. *See Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F.2d 242, 247 (9th Cir. 1990).

The Court recommends DENYING leave to amend.

**VIII. Motion to Strike Remedies**

"[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone*, 618 F.3d at 973.  Ultimately, whether to grant a motion to strike applying these standards lies within the sound discretion of the district court.  *Fantasy,* 984 F.2d at 1527.

Plaintiff seeks damages, injunctive and declaratory relief, attorney fees, and costs based on violations of Section 1981 and the Unruh Act.  *Id*. at ¶¶ 2, 53. The requested injunctive relief includes an injunction "to enjoin Defendant from violating the Unruh Act," and the Complaint cites California Civil Code section 52(a) to support its claim for attorney's fees and costs.  *Id*. at ¶61.  Plaintiff's prayers for relief include requests for "[i]njunctive relief, preventive relief, or any other relief the Court deems proper[,]" and for "[i]nterest at the legal rate from the date of the filing of this action."  *Id*. at Prayer, ¶¶ 1, 4.  Assuming *arguendo* that Plaintiff has alleged sufficient facts to support all three causes of action, Defendant argues the Court should strike these requests for relief.  ECF No. 8-1 at 4-5.

The Ninth Circuit does not permit courts to strike a prayer for relief pursuant to a Rule 12(f) motion to strike.  Based on the rule's plain meaning, the court in *Whittlestone* reviewed a decision to strike a prayer for damages based on whether it was "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous."  618 F.3d at 973-74.  It found the prayer was none of the five.  *Id.* at 974.  Specifically, the prayer could not be immaterial or impertinent because the recoverability of such damages "relate[d] directly to the plaintiff's underlying claim for relief."  *Id.* (citing *Fogerty*, 984 F.2d at 1527).  To the extent that the moving party argued those damages were precluded as a matter of law, the Ninth Circuit held that such an argument was in effect "an attempt to have certain portions of…[the] complaint dismissed…better suited for a Rule 12(b)(6) motion…not a Rule 12(f) motion."  *Id*.  This rule from *Whittlestone* has been applied to deny motions to strike prayers for prejudgment interest, even when such interest is unavailable as a matter of law.  *See Brown v. County of San Bernardino*, 2021 WL 99722, at *8 (C.D. Cal.).

The Court recommends DENYING the motion to strike.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion to file surreplies to Defendant's motions to dismiss and strike (ECF No. 26) is GRANTED;

**IT IS FURTHER RECOMMENDED THAT**:

1. Defendant's Motion to Dismiss (ECF No. 9) be GRANTED and the Complaint dismissed without leave to amend.

2. Defendant's Motion to Strike (ECF No. 8) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, Plaintiff may file written objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**SO ORDERED**.

DATED: January 14, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE